STEVEN G. KALAR
Federal Public Defender
Northern District of California
DAVID W. RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       david_rizk@fd.org

Counsel for Defendant ALVARADO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HENRY ALVARADO,<br><br>Defendant. | **Case No.:** CR 19–399 WHO<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

## I.   INTRODUCTION

Henry Alvarado will be before the Court for sentencing in this case concerning a $14 hand-to-hand in the Tenderloin. This case represents Mr. Alvarado's first ever conviction and sentence, despite a very difficult life and an addiction to opiates and cocaine that began in his teenage years. As the Court will recall, Mr. Alvarado completed 90-day residential treatment at Pathways while under pretrial supervision approximately one year ago, but then unfortunately absconded in the Spring. Last year, Pathways reported to U.S. Probation that Mr. Alvarado underwent a "dramatic positive change in behavior and attitude," and "took advantage of all the

supports offered and requested extra duties at the facility." Presentence Report (PSR) ¶ 48. He

wanted desperately to join the Court's Alternatives to Incarceration Program (ATIP) and would

have benefitted tremendously from the greatly increased level of support and supervision, but

was ineligible to participate due to his status as an undocumented immigrant. Instead, after a

relapse on the day prior to his presentence interview, which he admitted, he broke down under

the stress of the impending sentencing hearing. Despite assurances from prior counsel (Ms.

Linker) that the Court would likely understand his relapse, Mr. Alvarado was inconsolable, fell

back deeply into his addiction, and ceased communicating with U.S. Pretrial Services.[1] Mr.

Alvarado was arrested in November on suspicion of narcotics sales on the street in the

Tenderloin, and has been charged in an open and ongoing case before the San Francisco Superior

Court. Since his arrest on November 10, 2020, he has remained in continuous custody and, as of

the sentencing hearing, will have accrued credit of approximately six months in federal custody.

Mr. Alvarado sincerely regrets his relapse and his resulting failure to appear for

sentencing, as his letter to the Court reflects. Rizk Decl., Ex. A. Clearly, he still desperately

needs help. In the event he is not deported following his release from his sentence, Mr. Alvarado

is a potential candidate for Reentry Court given the traumas in his earlier life, his serious

addiction disorder, and his mental health needs. Rehabilitation of Mr. Alvarado rather than

incarceration, the defense respectfully submits, should be a leading objective for the Court in

fashioning a sentence. Mr. Alvarado therefore asks for a sentence of time served (effectively, six

months), following by three years of supervised release. He makes this request because, despite

his relapse, failure to appear, and re-arrest, (1) this behavior was driven by his addiction, low-

functioning, and personal circumstances, (2) this case is his very first conviction and sentence

---

[1] Throughout this case, undersigned counsel and Ms. Linker observed some concerning signs of mild cognitive impairment in Mr. Alvarado's thinking and communications to counsel—possibly a result of his severe substance abuse disorder or physical injuries he suffered during his childhood—including, most notably, after his relapse when he absconded. Rizk Decl. ¶ 3. The same was true immediately after he was arrested in November 2020. *Id.* Thankfully, his state of mind appears to have improved since then. To be clear, the defense does not doubt Mr. Alvarado's competency by offering these observations.

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARADO*, CR 19–399 WHO

ever, (3) he is likely to receive a separate sentence in his open San Francisco case, and (4) as set forth below, six months is a Guideline sentence, not a downward variance, and is greater punishment than otherwise similarly-situated defendants from the Tenderloin have received in this District. A sentence of six months for this addict and first-time offender, the defense submits, is a sufficient sentence.

## II.      FACTUAL BACKGROUND

Mr. Alvarado was born in 1990 to Henry Alvarado Escodo and Zoila Rodriguez Vazquez in Honduras. PSR ¶ 38. Although she lives across the country, Ms. Vazquez has a close relationship with Mr. Alvarado and remains supportive of him. *Id.* Mr. Alvarado no longer has any relationship with his father. *Id.* As set forth in the PSR, Mr. Alvarado and his sister suffered significant physical abuse at the hands of his father when they lived together in Honduras. *Id.* Mr. Alvarado suffered beatings during his childhood that were so severe that his friends and teachers noticed them at school. *Id.*



**Mr. Alvarado with his mother and sister.**

The family lived in an area of Honduras that was overrun by gangs. *Id.* ¶ 40. Mr. Alvarado and his family were threatened with violence if he did not join the gangs, and virtually all of his friends and acquaintances did so. *Id.* Mr. Alvarado and his mother came to the United States to escape in approximately 2005, when Mr. Alvarado was age 14. *Id.* Subsequently to coming to the United States, he learned of many deaths among those of his friends who stayed and submitted to the gangs. *Id.* Mr. Alvarado is understandably very fearful for his safety should he be deported to Honduras, but he also knows that he has an active ICE detainer and that if he is deported he must not return to the United States without permission, or else he will face a supervision violation and potentially new charges. *Id.*

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARADO*, CR 19–399 WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

When Mr. Alvarado arrived in the United States, he settled with a relative in Daly City, where they lived for approximately a year. His mother and sister remained in Honduras and his father, who was unsupportive of the move, cut off contact with Mr. Alvarado. *Id.* ¶ 38. As a child Mr. Alvarado was full of joy. Rizk Decl. Ex. B. He attended Jefferson High School in Daly City. *Id.* ¶ 50. He reported to U.S. Probation that he struggled in school due to the language barrier and lacked the



**Mr. Alvarado growing up at home.**

support to continue. *Id.* As a result, Mr. Alvarado dropped out after the 10th grade. He later moved to Richmond, and then Oakland. He worked doing odd jobs and construction. *Id.* ¶ 52. At the time this case was instituted, Mr. Alvarado was living in Oakland with his former girlfriend and her children. (Sadly, that relationship has fallen apart during the pendency of this case.)

Unfortunately, Mr. Alvarado developed a terrible addiction to cocaine while still in high school. *Id.* ¶ 47. It was an escape from the isolation and difficulties he experienced as a young man. Prior to this case, Mr. Alvarado had never previously received counseling or treatment for mental health, despite the abuse he suffered as a child. *Id.* ¶ 45. He has used cocaine daily since then, and also developed a daily addiction to heroin and other opiates. *Id.* ¶¶ 46-47. His addiction led to a string of arrests, starting as a teenager and throughout his twenties. However, Mr. Alvarado never sustained a conviction and sentence until this case. Throughout his life, he has been a heavy addict and he has only sold drugs to support



**Mr. Alvarado (right) with friends eating out.**

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARADO*, CR 19–399 WHO

his own serious heroin habit. *Id.* ¶ 52. A few years ago, in connection with one of his arrests, Mr.

Alvarado successfully completed diversion in a

state drug case. *Id.* ¶ 29. He reported to U.S.

Pretrial Services that he successfully participated in

a court-referred drug program for approximately

six months. Rizk Decl. ¶ 4. He also requested

treatment during pretrial proceedings in this case,

which led to the referral by Pretrial Services to

Pathways. *Id.* As noted above, Mr. Alvarado

embraced residential treatment and successfully

completed a 90-day program on February 29, 2020.

PSR ¶ 48. However, he relapsed approximately 10

days later, and the stress of this case, combined

with his distress over his relapse, was too much for

him to bear. He fell farther into his addiction,



**Mr. Alvarado shopping with a friend.**

despite the support and assurances defense counsel

attempted to offer him, and then ceased communicating.

When he was arrested on November 10, 2020, he was living on the streets and again

using cocaine and heroin. He was charged with sales of narcotics, and the case remains pending.

Undersigned counsel has been in continuous contact with Mr. Alvarado's San Francisco public

defender, who has related that the District Attorney's Office has not indicated it intends to drop

the case. Rizk Decl. ¶ 5. Defense counsel has reviewed the arrest report and discovery in that

case, and the prospect of a sentence in that matter, on top of the federal sentence, appears quite

possible. *Id.* A bench warrant is currently in place in that case to ensure that Mr. Alvarado

remains in custody and is returned to San Francisco following service of his sentence in this case.

*Id.*

//

//

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARADO*, CR 19–399 WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.      SENTENCING GUIDELINES

Mr. Alvarado submits that the Guidelines should be calculated as set forth below:

Base offense level, U.S.S.G. § 2D1.1:                                                                    12

Acceptance of responsibility, U.S.S.G. § 3E1.1:                                                        -2

**Total Offense Level                                                                                                10**

Mr. Alvarado objects to the PSR's denial of credit for acceptance of responsibility. The Guidelines of course authorize the Court to consider his failure to appear for sentencing, as well as his conduct on pretrial supervision, including "post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment)." U.S.S.G. § 3E1.1, App. Note 1(G). Fleeing to avoid a sentence would not support credit for acceptance of responsibility, concededly—but here the circumstances are quite different. First, of course, Mr. Alvarado did in fact plead guilty and accept a plea agreement early in proceedings. Second, he affirmatively sought and completed treatment as a form of rehabilitation and an indication of his desire to take responsibility for his criminal conduct and the addiction that drives it. Third, Mr. Alvarado did not flee. He relapsed, which he admitted to Pretrial Services. PSR ¶ 49. He remained in the community. Fourth, Mr. Alvarado has candidly conceded that he feared what the Court's reaction to his relapse would be at sentencing, but as counsel indicated above, his thinking at the time appeared changed due to his substance use. When he was arrested in November 2020, his affect and thinking appeared noticeably compromised due to the same. The bottom line is, Mr. Alvarado's addiction is sufficiently severe that he cannot take care of himself or reliably appear for proceedings when he is using substances, but that is not the same as refusing to acknowledge the wrongfulness of his conduct. Fifth, and finally, Mr. Alvarado's letter to the Court evinces sincere regret and speaks to his true state of mind more accurately than his addiction-driven behavior does. Rizk Decl. Ex. A.

Finally, and as a further indication of his acceptance of responsibility, Mr. Alvarado has offered to fully debrief the government concerning this offense prior to sentencing. Rizk Decl. ¶ 6. Mr. Alvarado is safety-valve eligible because (1) he has no prior criminal history, (2) the offense did not involve violence, threats, or a weapon, or (4) injury to anyone, and (5) Mr. Alvarado was not "an organizer, leader, manager, or supervisor of others in the offense."

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARADO*, CR 19–399 WHO

U.S.S.G. §§ 2D1.1(b)(18), 5C1.2; *see also* 18 U.S.C. § 3553(f). Taking into consideration his satisfaction of the safety valve requirements, Mr. Alvarado's Total Offense Level (TOL) would be reduced an additional two levels.

Mr. Alvarado has no prior convictions that led to sentences and therefore falls into Criminal History Category I. The Guideline sentence associated with a TOL of 10 and CHC I is 6-12 months. If the Court accords Mr. Alvarado credit for acceptance of responsibility and satisfying the safety valve requirements, the Guidelines sentence associated with a TOL of 8 and CHC I is 0-6 months.

## IV.     LEGAL STANDARD

The Court is familiar with the directives of *United States v. Booker,* 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence. Importantly, the Court may not presume the Guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam). Instead, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

## V.     ARGUMENT

Several matters warrant the Court's consideration in connection with Mr. Alvarado's request for a sentence of time served (effectively, six months) followed by three years of supervised release:

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARADO*, CR 19–399 WHO

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*First,* Mr. Alvarado's personal circumstances, his need for rehabilitation, and considerations of deterrence and public safety, cannot justify a longer sentence. Mr. Alvarado's life story is very sympathetic. He endured serious physical abuse as a child, was forced to flee his home at a young age due to threat and gang violence. Nearly all alone in this country, he failed to completely high school and fell into a serious long-term addiction. This offense consisted of street-level drug sales that did not involve violence, large quantities of controlled substances, or other particularly aggravating factors. Mr. Alvarado is certainly not a gang member, or an organizer or leader. He is an addict with relatively minimal criminal history who tried, and sadly failed, to establish his sobriety during this case. If he remains in this country, he will need considerable more assistance from the Court on supervised release.

As counsel has argued to the Court in other similar cases, the available data does not support the conclusion that longer sentences promote general deterrence.[2] Given the particular the circumstances of this case, the concept of specific deterrence also does not make sense in this particular case. As an initial matter, Mr. Alvarado has never received any prior sentence, so six months of custody has already sent a message to him. Moreover, Mr. Alvarado's conduct during this very case shows that his addiction does not operate in a rational manner. The reality is that his trauma and ongoing substance abuse are likely to have a greater impact on his behavior than the deterrent effect (if any) of a longer custodial sentence. The best way to address these risk factors is counseling and treatment, not greater institutionalization. Given all this context, the defense submits that the deterrent value of a marginally longer sentence, weighed against the desperation felt by undocumented addicts such as Mr. Alvarado, is questionable. The ordeal of his current and future incarceration during a global pandemic and near-certain deportation thereafter, followed by three years of supervised release, is sufficient punishment.

---

[2] *See, e.g.,* Kelli D. Tomlinson, *An Examination of Deterrence Theory: Where Do We Stand?* FEDERAL PROBATION 80 (3), 33-38 (Dec. 2016) ("Severity of punishment was once thought to deliver the main deterrent effect; the more severe the consequence for law-breaking, the less likely an individual is to commit a crime. However, this assumption has not been supported in the literature.").

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARADO*, CR 19–399 WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Second*, the need to avoid unwarranted disparities counsels in favor of the recommended sentence. Without presuming to know what sentence the Court would have imposed had Mr. Alvarado appeared for sentencing last spring, the defense submits that Mr. Alvarado likely would have been at least considered for a sentence of time served (of roughly two months, at that time) had he not missed his sentencing date. At a minimum, that is what the data on outcomes for similarly-situated defendants from small drug cases out of the Tenderloin suggests. In preparing for sentencing, the Federal Public Defender's Office examined cases it defended that were part of the U.S. Attorney's Office's Federal Initiative for the Tenderloin (FIT) campaign. The defense found that even for comparable defendants in CHC I who were in a *higher* offense level (namely, TOL 12-14) and thus facing Guidelines of 10-16 months and up to 15-21 months, thirty-one out of thirty-nine of such defendants received time served sentences, of approximately 4 months on average. Rizk Decl. ¶ 7. Thus, even compared to defendants facing *higher* Guideline ranges, a sentence of six months would amount to greater punishment than what other defendants in otherwise similar circumstances received. This group includes, not unlike Mr. Alvarado, many defendants who suffered multiple arrests, some of which were not charged, as well as many defendants who possessed greater amounts of narcotics across multiple arrests than Mr. Alvarado did. Also important to keep in mind is that, unlike some of those other Tenderloin defendants in CHC I, Mr. Alvarado has not suffered a single prior conviction in his life. Nor has he ever served a sentence. Thus, six months is itself sufficient punishment to address Mr. Alvarado's failure to appear and re-arrest on new charges.

The defense appreciates that, notwithstanding the foregoing data points, the Court may have enduring concerns about Mr. Alvarado's arrest in November 2020, since it represents a significant breach of trust and violation of the conditions of his release. A couple observations are relevant: first, the San Francisco case remains open and a bench warrant is in place, so Mr. Alvarado will spend more time in custody after his federal sentence is served. Mr. Alvarado has not plead guilty, but defense counsel has reviewed the evidence and is concerned that Mr. Alvarado may receive a separate (and consecutive) sentence in that matter following the resolution of this case. It would therefore be a mistake for the Court to assume that the state case

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARADO*, CR 19–399 WHO

will be dismissed, or that the federal sentence should include substantial additional time in custody to punish Mr. Alvarado for the allegations made in that case. At this time, the District Attorney's Office has not indicated that it plans to dismiss the state case and a warrant is instead in place. Rizk Decl. ¶ 5.

Also related to the November 2020 arrest, the defense was able to locate one other nearly identical case in which the defendant absconded, was re-arrested on new narcotics charges in the Tenderloin. *See United States v. Christopher Alvarez Garcia*, No. 20-CR-309 CRB, ECF Nos. 36, 40. Mr. Garcia plead guilty pursuant to a plea agreement that included the exact same Guidelines calculation at issue here (CHC I and TOL 10), and upon his release almost immediately cut off his ankle monitor and absconded, and then was re-arrested on new narcotics sales charges in the Tenderloin. *Id.* Mr. Garcia was arrested with multiple types of drugs (including fentanyl, originally) in similar quantities to Mr. Alvarado, and at the time of sentencing, was also facing an open state case in Superior Court, just like Mr. Alvarado. Mr. Garcia was credited with acceptance of responsibility without objection from U.S. Probation or the government, and the government asked for a custodial sentence of six months, which the Court imposed. *Id.* That case is virtually on all fours with this case, except that the defendant in that matter never completed residential treatment.

In sum, a longer period of incarceration will not achieve anything productive for the Court or the community in this matter. Six months for an addict and first time convict, who has suffered significant traumas and is likely facing more time for an open state case, and then possible deportation, is certainly sufficient punishment to serve the purposes of the sentencing statute.

*Third*, Mr. Alvarado's request comes at a time of extraordinary circumstances. He has already served four of six months during harsh conditions at Santa Rita Jail during the COVID-19 pandemic. Conditions in the jail are, as the Court is no doubt aware, much worse than usual. Inmates are in tight quarters, even more so with the closure of North County Jail. Most units have dozens of inmates living together, with two inmates to a cell. Access to personal hygiene items is limited with only those inmates that have certain means able to purchase commissary. While the

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARADO*, CR 19–399 WHO

jail has provided each inmate with a mask and one additional bar of soap, it is hardly enough to protect the population. Additionally, the jail has now restricted all visits to the jail. No attorney, family, friends, or even experts are allowed into the jail. Programming at the jail has been discontinued. Inmates are extremely anxious, and many are trying to stay holed up in their cells to avoid contact. Mr. Alvarado is himself very worried about himself and his mother and sister, with whom he has had limited contact since his arrest. Even after serving his federal sentence, Mr. Alvarado is likely to spend more time in state or immigration custody under equally harsh conditions. In sum, this is an exceptionally difficult to time to serve a sentence. Time served now is much harder than time served under normal circumstances and conditions are not likely to change anytime soon. Thus, a six-month sentence imposed now should be considered a much harsher sanction than it would normally be. Again, even if the Court grants Mr. Alvarado's request for a time served sentence, he is likely to spend more time in custody in San Francisco or in custody during removal proceedings under very difficult conditions. For this final reason, additional custodial time is not necessary to mete out sufficient punishment, consistent with the mandate of § 3553(a).

## VI.     CONCLUSION

Mr. Alvarado respectfully asks for a sentence of six months, followed by three years of supervised release.

Respectfully submitted,

Dated:    March 2, 2021          STEVEN G. KALAR
                                 Federal Public Defender
                                 Northern District of California


                                 _____/S_____
                                 DAVID W. RIZK
                                 Assistant Federal Public Defender